## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CYDNEY RAIFSNIDER : 
        PLAINTIFF, :

         :

        v. :        Civil Action No.

         :

RANDSTAD DIGITAL, LLC :
D/B/A CELLA, :
AND :
PENSKE TRUCK LEASING CO., L.P :
        DEFENDANT. :

         :        Jury Trial Demanded

## CIVIL COMPLAINT

PLAINTIFF, CYDNEY RAIFSNIDER by and through undersigned counsel,

hereby files this Civil Action Complaint against DEFENDANTS, RANDSTAD DIGITAL, LLC.,

D/B/A CELLA, AND PENSKE TRUCK LEASING CO., L.P, and avers the following:

### PARTIES

1. PLAINTIFF is Cydney Raifsnider, who was a resident of Berks County, Pennsylvania at all times relevant to these allegations.

2. DEFENDANT is Randstad Digital, LLC d/b/a Cella, who at all times relevant hereto conducts business in Berks County, Pennsylvania.

3. DEFENDANT is Penske Truck Leasing Co., L.P who at all times relevant hereto conducts business in Berks County, Pennsylvania.

4. PLAINTIFF was placed by DEFENDANT Randstad Digital, LLC d/b/a Cella to work for DEFENDANT Penske Truck Leasing Co., L.P. Although PLAINTIFF was hired and compensated through DEFENDANT Randstad, PLAINTIFF was treated in all functional

respects as an employee of DEFENDANT Penske while assigned to work at Penske's facility. DEFENDANT Penske supervised PLAINTIFF'S day-to-day work, directed PLAINTIFF'S job duties, established PLAINTIFF'S work expectations, maintained the authority to discipline PLAINTIFF, and exercised the authority to make decisions regarding PLAINTIFF'S continued employment, including the decision to terminate PLAINTIFF'S assignment, which resulted in the termination of PLAINTIFF'S employment. Accordingly, DEFENDANT Randstad and DEFENDANT Penske may be treated as PLAINTIFF'S single and/or joint employers for purposes of this action.

## NATURE OF THE CASE

5.  Plaintiff now brings claims against the Defendants pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.; the Pregnancy Discrimination Act ("PDA"), and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, et seq.

## JURISDICTION AND VENUE

6.  This District Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, as they arise under the laws of the United States.

7.  This Court  has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367

8.  Jurisdiction is proper in the Eastern District of Pennsylvania as PLAINTIFF was and is at all relevant times domiciled in Reading, Pennsylvania (Berks County) and DEFENDANTS regularly and continuously conducts business at all relevant times in Berks County, Pennsylvania.

9. Venue is proper in the Eastern District of Pennsylvania as PLAINTIFF worked for DEFENDANTS in Reading, Pennsylvania and was terminated from employment on October 4, 2024.

10. On or about May 5, 2026, PLAINTIFF received a Right to Sue Notice from the Equal Employment Opportunity Commission ("EEOC"), Philadelphia District Office, under PHRC Case No. 202401582 and PHRC Case No. 202401535 and EEOC Case No. 17F-2025-60377 and EEOC Case No. 17F202560376. This action is being filed within the 90-day statute of limitations provided by the Notice of Right to Sue.

**MATERIAL FACTS**

11. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

12. On or about May 15, 2023, PLAINTIFF was hired by DEFENDANT CELLA as a full-time Marketing Specialist and assigned exclusively to perform work for DEFENDANT PENSKE.

13. PLAINTIFF was compensated by DEFENDANT CELLA at the rate of approximately $38.00 per hour.

14. Throughout PLAINTIFF'S assignment, DEFENDANT PENSKE supervised PLAINTIFF'S day-to-day work, assigned projects, established work expectations, evaluated PLAINTIFF'S performance, and exercised authority over whether PLAINTIFF would remain assigned to DEFENDANT PENSKE.

15. Throughout her employment, PLAINTIFF satisfactorily performed the essential functions of her position and completed the work assigned to her.

16. During PLAINTIFF'S employment, DEFENDANT PENSKE provided PLAINTIFF with positive performance feedback and advised DEFENDANT CELLA that PLAINTIFF was being considered for conversion to a full-time position with DEFENDANT PENSKE once an existing hiring freeze was lifted. DEFENDANT CELLA communicated this information directly to PLAINTIFF.

17. Representatives of DEFENDANT CELLA and DEFENDANT PENSKE discussed PLAINTIFF'S anticipated conversion to full-time employment and the projected salary for that position with PLAINTIFF.

18. In or about June 2024, PLAINTIFF became pregnant.

19. In or around early September 2024, PLAINTIFF informed DEFENDANT CELLA, through its representative Tyler Hutchison, that she was pregnant and expressed concern regarding whether her pregnancy would affect her anticipated transition to full-time employment.

20. Shortly thereafter, PLAINTIFF informed DEFENDANT PENSKE, through her supervisor Stacy Lord, that she was pregnant.

21. Following PLAINTIFF'S pregnancy disclosure, the manner in which DEFENDANT PENSKE treated PLAINTIFF materially changed.

22. On or about September 24, 2024, PLAINTIFF met with Stacy Lord, an agent of DEFENDANT PENSKE, to discuss her pregnancy.

23. During that meeting, Ms. Lord questioned PLAINTIFF regarding her level of engagement, attributed perceived changes in PLAINTIFF'S performance to pregnancy symptoms, and expressed concern regarding how PLAINTIFF would balance caring for two children while performing her job duties.

24. Despite these comments, DEFENDANT PENSKE assured PLAINTIFF that her position remained secure and that she continued to be considered for a full-time position.

25. Prior to disclosing her pregnancy, PLAINTIFF had not been subjected by DEFENDANT PENSKE to the criticisms regarding her alleged engagement or commitment that were raised after her pregnancy became known.

26. PLAINTIFF continued performing her job duties and successfully completed the work assigned by DEFENDANT PENSKE following the September 24, 2024 meeting.

27. On or about October 3, 2024, PLAINTIFF completed and distributed a significant video project assigned by DEFENDANT PENSKE.

28. On or about October 4, 2024, PLAINTIFF was unexpectedly locked out of the computer systems utilized in her employment.

29. That same day, DEFENDANT CELLA informed PLAINTIFF that DEFENDANT PENSKE had elected to terminate PLAINTIFF'S assignment, thereby ending PLAINTIFF'S employment with DEFENDANT CELLA.

30. Prior to terminating PLAINTIFF'S assignment, neither DEFENDANT PENSKE nor DEFENDANT CELLA placed PLAINTIFF on a performance improvement plan, issued progressive discipline, or advised PLAINTIFF that her employment was in jeopardy.

31. Following PLAINTIFF'S pregnancy disclosure, DEFENDANT PENSKE asserted vague and shifting concerns regarding PLAINTIFF'S alleged performance, engagement, and childcare responsibilities despite previously praising PLAINTIFF'S work and discussing her anticipated conversion to full-time employment. DEFENDANT CELLA subsequently adopted and communicated DEFENDANT PENSKE'S stated reasons for ending PLAINTIFF'S employment.

32. DEFENDANT PENSKE stated that PLAINTIFF'S assignment ended because of alleged performance deficiencies and distractions during virtual meetings. PLAINTIFF avers that these asserted reasons are pretextual, false, and inconsistent with DEFENDANT PENSKE'S prior evaluations of her work, and constitute pretext for unlawful discrimination based upon PLAINTIFF'S pregnancy and sex.

33. DEFENDANT PENSKE'S decision to terminate PLAINTIFF'S assignment, and DEFENDANT CELLA'S termination of PLAINTIFF'S employment based upon that decision, occurred within weeks of PLAINTIFF'S disclosure that she was pregnant.

34. As a direct result of DEFENDANTS' unlawful conduct, PLAINTIFF lost her employment, the opportunity to transition to full-time employment with DEFENDANT PENSKE, wages, employment benefits, future earning capacity, and other employment opportunities.

35. DEFENDANTS' actions were intentional, willful, malicious, and/or undertaken with reckless indifference to PLAINTIFF'S rights under Title VII, the Pregnancy Discrimination Act, the Pregnant Workers Fairness Act, and the Pennsylvania Human Relations Act.

**COUNT I**
**GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII")**
**AGAINST DEFENDANTS, RANDSTAD DIGITAL, LLC., D/B/A CELLA, AND PENSKE TRUCK LEASING CO., L.P**

36. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

37. To establish a *prima facie* case of gender discrimination a plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for the position she sought to retain; (3) she suffered an adverse employment action, and (4) the action occurred under circumstances giving rise to an inference of discrimination. *Mandel v. M&Q Packaging Corp.*, 706 F. 3d 157, 169 (3d Cir. 2013).

38. PLAINTIFF is a member of a protected class as a woman.

39. PLAINTIFF was qualified for her position that she sought to retain.

40. DEFENDANTS' decision to terminate PLAINTIFF occurred under circumstances giving rise to an inference of unlawful sex discrimination. After learning that PLAINTIFF was pregnant, DEFENDANT PENSKE questioned PLAINTIFF'S engagement, attributed perceived changes in her work to pregnancy symptoms, and expressed concern regarding how PLAINTIFF would balance caring for two children with her professional responsibilities.

41. These comments and concerns reflected sex-based assumptions that PLAINTIFF, as a pregnant woman and mother, would be less committed, less available, and less capable of performing her job.

42. Had PLAINTIFF not been female, would not have been subjected to scrutiny concerning pregnancy symptoms, childbirth, motherhood, or her ability to balance childcare with employment.

43. Shortly after these sex-based concerns were raised, DEFENDANT PENSKE terminated PLAINTIFF'S assignment, and DEFENDANT CELLA implemented the termination of PLAINTIFF'S employment.

44. DEFENDANTS' reliance on PLAINTIFF'S pregnancy and anticipated childcare responsibilities constituted discrimination because of sex in violation of Title VII and the Pregnancy Discrimination Act.

45. DEFENDANTS' stated performance-related reasons for terminating PLAINTIFF were false and pretextual, particularly because PLAINTIFF had received positive performance feedback before disclosing her pregnancy and was not subjected to comparable criticisms until after her pregnancy became known.

46. PLAINTIFF'S sex was a motivating factor in DEFENDANTS' decision to terminate her employment.

**COUNT II**
**DISCRIMINATION IN VIOLATION OF THE PREGNANCY DISCRIMINATION ACT ("PDA")**
**AGAINST DEFENDANTS, RANDSTAD DIGITAL, LLC., D/B/A CELLA, AND PENSKE TRUCK LEASING CO., L.P**

47. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

48. Title VII prohibits discrimination by employers "because of [an individual's] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under the Pregnancy Discrimination Act ("PDA"), [t]he terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so

affected but similar in their ability or inability to work. *Etkins v. Dive N. Hills, LLC, No. 2:24-CV-01474-CCW,* 2026 WL 1487445, at 4 (W.D. Pa. May 28, 2026).

49. To establish a prima facie case of pregnancy discrimination, a plaintiff must demonstrate that: (1) she is or was pregnant, and her employer was aware of her pregnancy; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) there is a nexus between her pregnancy and the adverse employment action that would allow a factfinder to infer discrimination. *Keita v. Delta Cmty. Supports, Inc.,* Civil Action No. 19-5967, 2020 U.S. Dist. LEXIS 110550 (E.D. Pa. June 24, 2020).

50. At all relevant times, PLAINTIFF was pregnant, and both DEFENDANT CELLA and DEFENDANT PENSKE were aware of her pregnancy.

51. PLAINTIFF was qualified for her position as a Marketing Specialist and satisfactorily performed the essential functions of her job.

52. DEFENDANTS subjected PLAINTIFF to an adverse employment action by terminating her employment.

53. The timing of DEFENDANTS' decision to terminate PLAINTIFF'S employment, occurring shortly after DEFENDANTS learned of her pregnancy and following discussions concerning her pregnancy, pregnancy symptoms, and anticipated childcare responsibilities, gives rise to a strong inference of unlawful pregnancy discrimination.

54. After learning of PLAINTIFF'S pregnancy, DEFENDANT PENSKE questioned PLAINTIFF'S level of engagement, attributed perceived changes in her performance to pregnancy symptoms, and expressed concern regarding how PLAINTIFF would balance caring for two children while maintaining her employment.

55. DEFENDANTS treated PLAINTIFF less favorably because of her pregnancy and relied upon stereotypes and assumptions concerning pregnant employees and working mothers in making the decision to terminate her employment.

56. Prior to disclosing her pregnancy, PLAINTIFF had received positive performance feedback and had been advised that she remained under consideration for conversion to a full-time position with DEFENDANT PENSKE. Following her pregnancy disclosure, DEFENDANTS abruptly changed their assessment of PLAINTIFF'S performance and ultimately terminated her employment.

57. DEFENDANTS' stated reasons for terminating PLAINTIFF'S employment were false, inconsistent, and pretextual, and were offered to conceal unlawful discrimination on the basis of pregnancy.

58. DEFENDANTS discriminated against PLAINTIFF because of her pregnancy, childbirth, and/or related medical conditions in violation of the Pregnancy Discrimination Act.

**COUNT III**
**GENDER DISCRIMINATION IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT ("PHRA")**
**AGAINST DEFENDANTS, RANDSTAD DIGITAL, LLC.,  D/B/A CELLA, AND PENSKE TRUCK LEASING CO., L.P**

59. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

60. The Pennsylvania Human Relations Act ("PHRA") prohibits discrimination on the basis of gender, 43 P.S. § 951 et seq.

61. Claims brought under the PHRA are analyzed under the same legal framework as Title VII. Accordingly, for the reasons set forth in Count I above, DEFENDANTS

discriminated against PLAINTIFF because of her sex by subjecting her to disparate treatment and terminating her employment.

## JURY DEMAND

62. PLAINTIFF requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

63. WHEREFORE, PLAINTIFF, Cydney Raifsnider, respectfully request that this Honorable Court enter judgment in her favor and against DEFENDANTS, RANDSTAD DIGITAL, LLC., D/B/A CELLA, AND PENSKE TRUCK LEASING CO., L.P and the Court, award PLAINTIFF actual damages for the loss of revenue, including back-pay, differential pay, future earnings and lost benefits with interest; compensatory damages for distress, lost career, embarrassment, and humiliation; punitive damages; costs of this action and reasonable attorney's fees, and all other relief which PLAINTIFF may appear entitled or which the Court deems appropriate and just.

**STARK LAW GROUP, LLC**

By:_____/s/ Alexis Conrad____
Alexis Conrad
Attorney Bar No: 335686
1370 Harrisburg Pike
Lancaster, PA 17601
Phone: 717-844-6350
Email:alexis@starklawllc.com

DATE:  7/16/2026